The last case on for argument is Docket 16-2396, which is Allen v. Taylor, and it is the attorneys' fees issue. Thank you, Your Honor. May it please the Court, Bob Abrams representing the Allens and the Southways and their appeal from the fee decision of the District Court. I would like to focus on four errors, abuse of discretion in each error, based on that decision. The first point I'd like to make is the Court erred by failing to make necessary findings on important Goldberger factors. A factor that is deemed the foremost factor is the amount of risk. The District Court did not make any finding on the amount of risk. What the Court said in its fee opinion is that risk, quote, arises primarily from plaintiffs' difficulty in establishing liability and damages. That's true in every case. In this case, you look at risk . . . well, in all cases, you look at risk from the beginning, all common fund cases, from the beginning of the action. In this action, there was no government case to work off of, as is typical in common fund cases. There were no investigations by the State of Vermont or the State of New Hampshire. The federal government did do an investigation. It took a bunch of depositions, but it failed to bring a suit. The amount of risk was very significant in this antitrust case. The market definition, the approach that we knew defendants would take to the case, and as this Court, the Second Circuit, said in the Bolar case, if we are to be satisfied that a district court has properly exercised its discretion, we must be informed by the record of why the district court acted as it did. This is why, in the context of attorney's fee awards, we have demanded, quote, specific reasons, end quote, when a district court departs from the lodestar figure, which is strongly presumed to be reasonable. Well, the court departed from the lodestar figure. It granted counsel 40 percent of its lodestar, of counsel's lodestar. And the same lack of finding of fact required by Goldberger is true with respect to the magnitude of the case and the complexity of the case. Well, this Court has said many, many times that the complexity of antitrust cases is inherent. The magnitude was recently referred to by Mr. Pearson with seventy-some depositions. There were five million documents. It's been seven years of hard . In the fee opinion that percentage is 10risky .   . . . . . What I would have hoped for and actually reflected in record . . . . . . . But in the settlement opinion on pages 10 and 11 the court discusses risk. . And a very significant risk that the court observed. . . . All of those risks were See this is an interesting thing. So the court says in the settlement opinion that well you know this is a case that you might well have lost . So you get more fees because you brought a not very good case. . . . No . . So we get fees because the purpose of granting fees is to incentivize counsel. . . And those who get the benefit of counsel services are paying for those services through the fee. Those are the two basic reasons for the fees.  . It's not been done. It was done by Judge Eastabrook and the Seventh Circuit. And I will acknowledge that in the East Astor book opinion it had been sent down went back. Sent down again and went back. So what we say?   Prime Minister of New York to New York city councilmember had referred to the east astorbook but none of the restrictions. And so in her book, New York   citizen. But she stood for it. And ILaughter. ≫ That actually records the time she had been there. ≫ I don't know if that's correct. ≫ It's about risk. You district court did not adequately consider the risk that plaintiff's counsel undertook here. ≫ That is one of the reasons. ≫ And therefore they get therefore and the risk is X. Tell me what's that? ≫ The risk is, well, the fact, the record is that the plaintiff's counsel did not    And the court did not want to, but the court made errors in law on findings or the applicable law and considerations it did have. You would vacate it, remand it for reconsideration of attorney's fees in light of the Goldberger factors. And certain other errors which are in our brief, but I'm  ≫ Is there really any difference in this case that so many of the named plaintiffs found themselves in quite a contentious relationship with counsel? Is that something that bears at all on how well this was conducted? ≫ Well, it would if I agreed with your premise, which I do not. There weren't that many plaintiffs that disagreed with counsel. As Mr. Pearson said, the Haars did disagree with counsel. They did not want this case to settle. ≫ How many of the named plaintiffs, original named plaintiffs opted out? ≫ Two opted out. ≫ Out of how many? ≫ Out of four. ≫ And then the third is the Haars. So you got one. ≫ Well, we had four. ≫ So we have four. ≫ So there's four. And I'm not now talking about the breadth of support or a lack of support for the settlement among the class, that's a different issue. But it seems like the people who were most actively involved in the litigation had what the court ultimately characterized as a breakdown in communication, putting it gently, with counsel. And a consequence of that was the appointment of additional counsel, as well as the substitution of additional named plaintiffs, I understand that. But in a case where we've now got other counsel to worry about compensating as well, in part because of this breakdown, I'm wondering if that is a factor that the district court should appropriately consider in deciding what is an appropriate level of fee for the lawyers who originally brought the case. ≫ I won't quarrel with that should be taken into account overall. What I will quarrel with was that there was a breakdown in communications. What there was, was certain plaintiffs did not want settlement, period. End of story. We have an obligation, in your cases, say it, even if  settlement but it benefits the class, that's our duty. In this settlement, we have a settlement that is the largest dollar settlement in Vermont history in terms of verdicts or settlements that are reported, and you focused on the non-monetary issues, and they were, I like to think I'm modest, but I'm not modest here, that was a terrific settlement for non-monetary matters, the injunctive matters. And you're right, the court should be able to do that. I do certainly appreciate the fact that as opposed to the securities class actions that this court probably sees the most of and some of the consumer class actions, a case like Sharon is really closer because a case that is brought in effect by activist plaintiffs who have a, you know, a grievance that is not  easily reduced to, you know, a dollar amount, is a case that is brought in effect by activists and they're   kind of plaintiff, and you know, we'll often have difficulty with counsel and difficulty with the kind of realism that lawyers bring to the table, so I'm not, I'm not, it's not a polemic question, or as polemic as it may have sounded, but it is something that is on my mind as I look at this, that the district court was facing a case that led to a fairly expensive addition to the table, right? Well, what I would suggest, Your Honor, and it is in the record, of course, there was a two-day hearing. There were witnesses. At the conclusion of that, the court made its findings. It didn't find that counsel did anything wrong, anything  was zero support for the, what led to the hearing. So, yes, we're going to continue to have a two-day hearing. But we had to do that. And it affected us because we actually really care about what we're doing. But there was no basis for it. So if the court takes it into account, and I agree with you, it should. There's no reason to charge it against the defense.  I know that I'm out of time, but... Yeah, like five minutes over, but I'm going to try to get everybody focused. You have a quick point you want to make... Yes, thank you. I said that the court was in error as a matter of law on certain points, it looked at the fee in relation to the settlement factor of Goldberger. And it adopted intervener counsel's suggestion that the fee request, the $16 million, if you lowered that, it would increase the $4,000 per month. That's a mathematical certainty. That is not the basis for looking at fees in common fund cases, however. Furthermore, everybody has talked here this morning about the non-monetary relief. It was worth substantially more, according to everybody, than the monetary relief. But it wasn't taken into account at all by the court in its evaluation. And the court recognized, because it did send us back once, it recognized the value of the non-monetary relief, but it's not in the fee opinion. I'm a little puzzled by that, too. Am I right that the original dollar amount of the  to the adjournment board was the same? Yes. So the district court says that the settlement was not worth  dollar relief. It says there are these equitable things that concern me. And you go back to the table and you come back with something that you now say is worth more than the dollar relief in the first place, but you didn't have to pay for it. The defendants didn't insist on paying fewer dollars if they're going to do these other things that are so valuable or costly. That's not what often happens in these negotiations. I can tell you, because I'm the person who did it, we weren't going to settle for less than $50 million, period. And that was told to the court as well. I don't agree with you that the value that was originally obtained for that were rather the injunctive provisions that   they were. In fact, the record maybe we could cite you as a lawyer, but the record says that the injunctive provisions were not the injunctive provisions. I mean, these are all things that are very difficult to evaluate from the distance of a court of appeals, which is why we defer so substantially to the district court. All I'm saying is, and without doubting that the defendants fought hard in   additional equitable relief, these look like things that we're going to have to pay for. We're going to have to pay for.   equitable stuff. And I don't doubt that would be of value. I don't doubt that. But they seem to have been . . . the judge said give us some equitable stuff. We got some additional equitable stuff. And everything else stayed the same. It gives me a pause over how I am to value or put some value, dollar value on those additional . . . things.   I don't doubt that we shouldn't be asking for that exact monetary value. We were seeking . . . we were seeking 75 percent of our load star. We are not seeking our full load star. You don't have to get to the nonmonetary value. Goldberger says look at the value of the entire settlement. That's all I am saying. Look at the value. If the load star is presumptively reasonable, which it is under all the second circuit cases, and we are asking for 75 percent of our load star, you don't have to put a dollar value on the nonmonetary relief. You just have to recognize it for what it is, which is very valuable. She did say in her opinion, in comparison to the settlement in southeastern milk antitrust litigation, in which the evidence of alleged antitrust violations was arguably stronger and the statute of limitations issues were less daunting, the monetary recovery was more modest. The monetary recovery in the instant case is modest, but the injunctive relief is significantly broader. So she did consider that injunctive relief, right? I thought you said earlier she did, no? No. She sent us back to get more injunctive relief. So if I said something contrary to that, I must have misspoken. Mr. Abrams, you've reserved two minutes for rebuttal. Yes, sir. Thank you. Thank you. Mr. Smith. Good afternoon, Your Honors. May it please the court, my name is Daniel Smith with Richard Cassidy. I'm co-counsel, representing the DFA and the non-DFA, non-DMS subclass in the case. More particularly for these proceedings, I'm representing the two        Daryl Abertine and Steve Taylor. In Mr. Abertine's case, I'm representing the non-DFA and non-DMS subclass in the case. Mr.  non-DFS subclass. His farm is a either six or seven generation farm. So in addition to serving as commissioner of agriculture, he's also a long-time family farmer. Mr. Taylor, former commissioner from New Hampshire, currently operating his farm with both his sons and his   class members and tried to bring their experience to what had become, in your honors, a non-DFA subclass in the case.   made a stale-mated description, well, in the district court's description, a stale-mated point of the case. Mr. Taylor, for the purpose of this proceeding, the issue is relatively straightforward as to whether the district court's fee award, percentage fee award, was an abuse of discretion. Mr. Taylor and Mr. Abertine got into the case, as you indicated, at the point when the district court rejected the first settlement. The issue of the fee was of concern. The caliber of the non-monetary relief was of concern and the stale-mated position of the case was of concern. They decided to bring their experience to bear in the case and see if they could break the stale-mate, see if they could enhance the non-injunctive relief and see if they could find a more reasonable balance in the fee as against the outcome of the case at that point. So they've tracked the fee award from the inception of their involvement to this point. Obviously the most significant point in the fairness proceedings in terms of the fee, Mr. Abertine and Mr. Taylor proposed an alternative fee amount that was less than what lead counsel had proposed, $11.5 million as opposed to   than what the court awarded. So once the decision came to the district court, they decided to increase the amount of alternative fee. So when the decision came out, our options were clear, indicate that the fee award was too little against what we had proposed, and either join with the appeal or to bring an appeal in the alternative based on our alternative fee award. After consideration of the    the case and came out with the alternative fee award. So we were able to increase the amount of alternative fee. We were able to increase the amount of  In conclusion, we concluded that within the court's broad band of discretion, clearly most deferential standard of review in this court, under all the precedent, that the court had satisfied the Goldberger criteria. As your questions have indicated, the court went through all six of the criteria, did an analysis under all six of the criteria, and came out where the court came out. So there's obviously some subjectivity to it involved. You have a $7 million award, you have an $11.5 million calculation as an alternative, and you have a $16.6 million calculation. So you have three calculations. So it's a discretionary decision. So if you consider the decision from that standpoint, the court's deferential    where we came out. So we determined, Mr. Arbortine and Mr. Goldberger, that there was a discretionary decision that the court had tailored, determined, to join the case, and it's obviously a somewhat awkward position. But nonetheless, that's why we're here today, is to urge that the court conclude that the district court acted within the court's discretion and affirm the decision. JUDGE LEBEN What do you do with Mr. Abrams' argument that   I'm trying not to overstate his argument, but essentially to follow the loadstep. So what do you do with Mr. Abrams' argument that   but essentially to follow the loadstep. So obviously, all of us are not insensitive to the disparity between the loadstep and the award, notwithstanding the assertion in the reply brief, never got into the case, never had any intention of   calculation of a fee that's reasonable under the court's precedent. So the function of the loadstep is to determine whether or not there's a discrepancy. The loadstep is obviously bounced back and forth in the court's jurisprudence. Are you going to use a loadstep method? Are you going to use a percentage of the fee award method? And the trend of the circuit is to use a fee award method, and it's left to the discretion to choose one or the other, and where the loadstep fits in with where a choice has been made to use a percentage method is where we are. The loadstep crosscheck is obviously a clear option, but it does not appear that a court is bound to even do that and thereby not consider the loadstar at all. I wouldn't think that's appropriate in this case, but it seems to have been an option. It seems that under Bear Stearns, what the district court did is consistent with precedent, which is to consider the loadstar within the time and expense, time and commitment of resources, the first Goldberger criterion, and considered it under that and considered it within that consideration and indicated that clearly counsel had put in substantial time and effort into the case, so the judge did consider the loadstar within that criteria. As far as, I think, the whether and how far you go beyond that to this some concept of a presumption of reasonableness, because the request is less than the loadstar, which is clearly a key premise of their argument, I think the case, the initial public offering litigation, which I think is probably the clearest discussion of that, the facts are so different that it's hard to analogize, it seems to    the delta between the loadstar and the loadstar was so much greater, and the loadstar was so much greater, and the loadstar and the fee was so much less, that you're creating a precedent of a presumption of reasonableness. So I think you go back to the discretion to the district court to consider the loadstar in the case, and I think Your Honor's point that the court in this case was intimately involved with the nuances of the case, which is the  review, why you're not working off a cold record on appeal, you're deferring to the district court, you're not working off a cold record on appeal, you're deferring to a judge that's had daily with any manner of both what you could contemplate from a complex antitrust case to things that you couldn't contemplate coming up with all of the difficulties that occurred with the named representatives. So you have a substantial record in which the court is   litigants and the attorneys, and within that, the loadstar is one piece, Your Honor, and I think that's a very important piece of the case, and I think it's one piece of the whole puzzle. Thank you. We've used a lot of time. I would just like to close and say that I think in this case, in addition to the standard of review itself, the court's clear reference throughout to its function as a  case, and from my this first-class action I've been involved in, the fiduciary responsibility is to make sure that there's a clear reference to that role, and I think the responsibility of the district court really stands out, both in terms of function and in this case, the court's constant reference to that role. She clearly took that the judge clearly took that role very seriously in this case, and she came out where she came out as a result. Accordingly, we would ask the court to affirm the court's decision. Thank you very much. Mr. Habeas. Thank you, Your Honor. First, Your Honor, you asked for cases where the court vacated few awards. Wilhelmina, Fears v. Wilhelmina, the MBS case, and Ebola are all cited in our briefs. Addressing intervener counsel, they sought to       intervener counsel sought to intervene in this case three times, and were rejected three times. The last time, the intervener counsel sought to intervene in this case three times. We, and that's when Mr. Aubertine and Taylor were involved, and where this brouhaha had developed that you've heard about, our reaction was, you know, the court wants to hear more. That's fine. The court should  wants about farmers and issues in this case. So we didn't object to Mr. Aubertine and Taylor coming into the case. We didn't object to Mr.  Taylor coming into the case. But she did not allow counsel in the case at that time, because she was concerned about costs, and she did do her role and have the fiduciary role in mind. She cared about the cost to the class. Well, then a motion for reconsiderations filed where Mr. Aubertine and Taylor were not going to stay in the case unless they had their counsel, and so their counsel is requesting 232% of their load star as a fee in this case. I think that says something. Counsel talked about breaking the settlement.               Hays, the Hays, the Hays, the Hays, the Hays, the Hays, the Hays, the Hays, the Hays, the Hays, the Hays, the Hays, the Hays, the Sitzs, and Swantach and Alice Allen. That's what it was before intervener counsel came in. That's what it is today. You got Swiss and Swan Tach opting out and pursuing individual cases with 120 or so, and that is going on today, by the way. I'm going to add to that the grain of salt that should be taken in terms of risk, because we took risk from the day we     counsel took no risk in this case, and I ask you to bear that in mind when viewing the arguments of counsel. I'm going to add to that the grain of salt that should be taken in   I ask you to bear that in mind when viewing the arguments of counsel. Thank you for the extended time. Thank you very much. Thank you both. Thanks to all of you for your participation before us today in this case that was going on on the floor below me where my chambers are. We all appreciate your arguments. The final case is on submission, so I'll ask the clerk, please, to adjourn to two minutes remaining.